UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ABRAHAM JAMES PETTWAY

      PLAINTIFF

                                CIVIL ACTION NO. 3:17-cv-00073

v.

LOGISTICS SOLUTIONS GROUP LLC

      DEFENDANT

AKIMA LLC, INDIVIDUALLY AND
  ITS WHOLLY OWNED SUBSIDIARIES:
  AKIMA SUPPORT OPERATIONS LLC
  WOLVERINE SERVICES LLC
    SERVICE ADDRESS:
    CT CORPORATION SYSTEM
    4701 COX ROAD, SUITE 285
    GLEN ALLEN VA 23060

      DEFENDANTS

## AMENDED COMPLAINT

  Comes the Plaintiff Abraham Pettway and for his Amended Complaint against the Defendant

LOGISTICS SOLUTIONS GROUP INC, (LSG) and the additional named Defendants, AKIMA

LLC, INDIVIDUALLY AND ITS WHOLLY OWNED SUBSIDIARIES, AKIMA SUPPORT

OPERATIONS LLC, WOLVERINE SERVICES LLC states as follows:

## PARTIES JURISDICTION AND VENUE

1.    This is an action under Title I of the Civil Rights Act of 1991, 42 U.S.C. Section

     2000e-2 et seq.; the Civil Rights Act of 1964, 42 U.S.C. Section 1981 et seq.; the Age

     Discrimination in Employment Act of 1967 as amended, ("The ADEA")29 U.S.C.

Section 621 et seq., the Americans with Disabilities act that can be found at 42 U.S.C. § 12101 et seq. and under KRS CHAPTER 344, to correct and remedy unlawful employment practices on the basis of race, color, age, disability and retaliation, and to make whole and compensate the Plaintiff for the Defendant(s) wrongful  and  willful discrimination and retaliation  against  Plaintiff.

2.   Abraham Pettway is an individual who lives at 346 Valley View Drive, in the city of Radcliff and the county of Hardin in the Commonwealth of Kentucky.

3.   Logistics Solutions Group Inc. does, in fact, do business within the Commonwealth of Kentucky with an office in Fort Knox, Hardin County, Kentucky.

4.   Logistics Solutions Group Inc. (LSG) was incorporated and licensed to do business in the Commonwealth of Virginia on August 27, 1999, with a principle place of business of 4701 Owens Way, Prince George VA, 23875 and a Virginia agent for service of process listed as CT Corporation Systems 4701 Cox Road, Suite 285 Glen Allen VA 23060.

5.   Logistics Solutions Group Inc is a foreign corporation that was registered with the Kentucky Secretary of State on or about July 11, 2012 with its designated agent for service of process as National Corporate Research, Ltd., 828 Lane Allen Road, Suite 219, Lexington, KY 40504.

6.   Akima LLC (Akima) is a holding company for its wholly owned subsidiaries, which include Wolverine Services LLC (Wolverine), and Akima Support Operations LLC (Akima Support), all of which are Alaska LLC's who have done business in the Commonwealth of KY.  Wolverine and Akima support appear to be 8 (a) certified as Native American owned businesses.

7.   Akima LLC was never licensed to do business in KY, Akima Support Operations LLC and Wolverine Services LLC are no longer licensed to do business in Kentucky.  Akima

Support Operations LLC's notice of revocation of certificate of authority was returned undeliverable to the Kentucky Secretary of State. Wolverine Services LLC withdrew from KY and all notices are to be sent to 13873 Park Center Road, Suite 400 N Herndon VA 20171 which is also the principal place of business for both Akima LLC and Akima Support Operations LLC.

8. This court has jurisdiction of the federal claims asserted here pursuant to 28 U.S.C. Sections 1331 and 1343; pursuant to 42 U.S.C. Section 12117, which incorporates by reference 42 U.S.C. Section 2000e- 5(f)(1) and (3); pursuant to 42 U.S.C. Section 1981a. This Court has supplemental jurisdiction over the claims in this action arising under the laws of Kentucky pursuant to 28 U.S.C. Section 1367 and the principles of pendent jurisdiction. This Court also has jurisdiction based upon the amount of Plaintiff's claims and diversity of citizenship pursuant to 28 U.S.C. Section 1332.

## <u>GENERAL ALLEGATIONS</u>

9. The Plaintiff, Abraham Pettway, (Pettway) is a 79-year-old man who has continuously worked at Fort Knox, Hardin County, as a civilian dispatcher since June 1 of 2001. He works as a bus dispatcher at the Transportation Motor Pool facility commonly referred to as TMP.

10. Pettway is a veteran and retired from the U.S. Army.

11. LSG is a Service-Disabled Veteran-Owned Small Business government contractor, providing logistics and information technology services.

12. Wolverine, Akima and Akima Support provided logistics support services at Fort Knox KY during the period of 2012 to 2015 and were Mr. Pettway's employers before LSG assumed the contract.

13.     LSG is the successor to Wolverine, Akima and Akima Support and now provides logistics support services at Fort Knox KY and is Mr. Pettway's current employer.

14.     Upon information and belief, it is common practice in the government provided logistics service industry for contractors to assume ongoing operations in substantially unchanged form, retaining substantially all staff, supervisors, operations, equipment and providing the same services as its predecessor, to maintain substantial continuity, becoming a successor to all interests and liabilities of the prior contractor.

15.     Upon information and belief, in late 2014, when Akima and Akima Support ostensibly assumed responsibilities for the contract and employed Mr. Pettway, Wolverine still managed the contract. Paychecks and W-2's were issued in the name of Akima Support Operations LLC. Operations continued in this manner until LSG took over the contract. Upon information and belief, Wolverine, Akima and Akima Support jointly performed and were jointly responsible under the contract providing logistics services at Fort Knox KY for TMP operations under the direct control of Akima LLC.

16.     Upon information and belief, when each of the Defendants contracted to provide logistics services at Fort Knox KY, they fully assumed as successor, all aspects of the existing contract under which Pettway was employed and assumed substantially all the employees, including supervisors, duties, obligations, equipment, location, responsibilities, and liabilities of its predecessor at the Fort Knox, Hardin County, facility where Pettway is and has been employed since 2001.

17.     When Wolverine, Akima, Akima Support and Logistics Solutions Group, each assumed the sub-contract providing services to Fort Knox KY, Pettway's full employment status

was maintained and continued, including his 2001 hire date, length of service, and benefits of the length of service, including seniority and vacation time.

18. Pettway has had the same supervisor, Ms. Donnell Scott, since 2011.

19. LSG and its predecessors in interest, including Wolverine, Akima and Akima Support, through their policies and procedures and by the actions of their supervisors, discriminate against African Americans, older workers, men, and persons with perceived disabilities. This is particularly true at the Fort Knox, Hardin County, Kentucky TMP location.

20. Pettway first reported discrimination by Ms. Scott, in 2013 to the base EEO department and then to Wolverine, Akima and Akima Support, through Mr. Berthold, its Transportation Manager.  He again reported discrimination to Wolverine, Akima and Akima Support through Berthold, when he was transferred to second shift in April of 2014.

21.  Upon information and belief, Wolverine, Akima and Akima Support failed to take corrective action or investigate Mr. Pettway's complaints, allowing the discrimination and harassment to continue.

22. Mr. Berthold served as Transportation Manager under Wolverine, Akima and Akima Support and LSG.

23. Upon information and belief, the Defendants, Wolverine, Akima and Akima Support and LSG knew or should have known that there was ongoing discrimination, harassment, and retaliation at Fort Knox TMP and there were substantive issues with and complaints about Scott discriminating against Mr. Pettway and other employees in her capacity as supervisor, on their behalf and they continued to invest her with the power and authority to hire fire and discipline employees without substantive supervision, training, or oversight.

24. When Berthold left LSG, he was replaced by Jarret L. Gonsalves.

25. Pettway who had seniority and who was lead dispatcher, was transferred to second shift in 2014 and demoted to dispatcher from lead dispatcher and then demoted to part-time in October of 2016 because of his age, race, sex, and/or perceived disability and in retaliation for his discrimination complaints.

26. Since the filing of the original complaint, while LSG offered Pettway a full-time position, they have actively singled him out for writeups and discipline that are a pretext for retaliation because of his filing this complaint; while taking no action against white employees, females, and younger workers for the same or similar issues.

27. Other employees have complained of and/or raised concerns about discrimination and retaliation affecting themselves and others, at the Fort Knox, Hardin County, Kentucky location to the Defendants, LSG, Wolverine, Akima and Akima Support, but no action has been taken by any of the Defendants, allowing the discrimination and harassment to continue.

28. The discrimination based upon Pettway's age, race, sex, and/or perceived disability has been continuous for at least four years and has continued through successive contractors.

29. While working for the Defendants, Pettway has been treated like he is disabled with a poor memory and lack of mental capacity solely because of his age.   Pettway has full mental capacity and does not have, memory retention, or comprehension issues.

30. LSG perceives, and Wolverine Akima and Akima Support perceived Mr. Pettway's age as a disability, having stereotyped him as mentally and physically deficient due to his age, and discriminated against him because of that perceived disability.

31. LSG, treats and Wolverine Akima and Akima Support treated, Mr. Pettway differently than other similarly situated white and younger employees giving them preference because of

their age, race, sex, and lack of disability.

32.   Preference given to white employees, by LSG includes but is not limited to, denying, and limiting holiday pay for African Americans and specifically Pettway.   In 2016/2017 there were four incidents.

   a.   First, Pettway was scheduled to work in July and September so that he would receive holiday pay. (LSG posts schedules at the end of the month for the following month.). When possible, employees with regular work schedules are given schedules that will allow them to receive holiday pay as if they had worked their regular schedule when the observed holiday occurs on a weekday.

   b.   In July, Pettway who was full-time, had his scheduled hours cut, after the schedules were posted and his hours were given to two white employees Kelly Denson and Mr. Robie Richardson at the last minute so that Pettway's holiday pay was significantly reduced and so that the white employees would receive more holiday pay.

   c.   In September of 2016, over the holiday weekend, Pettway was scheduled to work so that he would receive holiday pay for Labor Day.   At the last minute, Ms. Scott told him that he was not to work the hours he was scheduled and that Ms. Fisher, a white female employee was going to work them instead.   This was done so that Ms. Fisher, a white female who is full time, with less seniority but who is now lead dispatcher, would receive holiday pay and Pettway would be denied and was, in fact, denied holiday pay.

   d.   In telling Pettway the he was not to work as scheduled Ms. Scott spoke to him in a derogatory fashion, as if he were feeble minded, due to his age, slowly and

emphatically enunciating each word. "TOMORROW    YOU    ARE NOT TO COME IN TO WORK BEFORE 1630.    DO YOU UNDERSTAND? ARE YOU LISTENING TO ME?" Mr. Pettway was not distracted and had been giving Ms. Scott his full attention. He was obviously not only listening to her but being respectful.  This, treatment of Pettway was offensive, humiliating, and unfair.   Nevertheless, Pettway responded respectfully saying "Yes ma'am, I understand."

e.  Scott's tone was deliberately insulting as if Pettway was incapable of understanding or remembering the instruction. Scott does not speak to other employees who are younger in such a derogatory tone and in such an offensive manner.

f.  When speaking to Pettway, this is the same manner that Ms. Scott typically uses to address Pettway.  She does not use this tone when addressing younger, white, and female employees.

g.  By December 2016, because of his race, age and in retaliation for his refusal to drop his claims of discrimination, Pettway was scheduled so that he would be denied, and was denied, holiday pay for Christmas and New Year's 2017 and failed to schedule him to work from December 16, 2016 to January 3, 2016. Upon information and belief, all white employees working under Ms. Scott, received holiday pay for these dates.

33.  Wolverine, Akima and Akima Support took and LSG currently takes selective disciplinary action against Pettway and other African American and older employees as a pretext for

adverse employment action due to race, age, sex, and disability; and to retaliate against anyone who reports or complains about the discriminatory conduct.

34. LSG, Wolverine, Akima and Akima Support ratified the discriminatory and retaliatory acts by failing to take action to stop them and thereby encouraged the continuation of the discrimination and retaliation.

35. In August of 2016, Pettway who had been the logistic scheduler for many years was removed by LSG from this position as well, because of his age, race, and sex.

36. One example of the discriminatory disparate treatment between white and African Americans involves an incident in September of 2016 with Mr. Pettway.

    a. Ms. Wheeler, a substantially younger, white female employee, with less seniority was given Mr. Pettway's logistic scheduler responsibilities in August 2016, and was responsible for providing a vehicle assignment sheet to Pettway each day.

    b. One day, in September of 2016, Wheeler failed to provide the assignment sheet to Mr. Pettway, before leaving for the day.   When Pettway discovered that the assignment sheet had not been provided, and he could not locate it, neither Wheeler nor Scott were available.

    c. Pettway called Scott, who did not answer her phone or return Mr. Pettway's call when he was unable to locate the assignment sheet.

    d. Pettway assigned vehicles to meet the company needs as he had done for many years.   While all the work was handled, it was allegedly not done in accord with the missing schedule.

e.  Pettway was written-up for failing to follow the schedule and insubordination while Wheeler, a white female, who failed to provide the assignment sheet was not.

f.  Upon information and belief, at the time the write-up was issued, LSG was preparing to move a dispatcher to part-time, the selection process for which was to be determined first by performance, then seniority.

g.  Upon information and belief, the failure to provide Mr. Pettway with the bus assignment sheet was intentional and designed as a pretext to hide its discriminatory intent to keep a substantially younger white female dispatcher with less seniority on full-time and transfer Mr. Pettway because of age, race, sex, and/or perceived disability to part-time employment.

37.  LSG's employee handbook provides that a person "experiencing discrimination or harassment, should report the incident to your manager or any officer of LSG with whom you feel comfortable."

38.  In compliance with LSG's handbook, Mr. Pettway attempted to make an appointment with Mr. Gonsalves to report the discrimination, when he failed to return the call, Mr. Pettway contacted Casey Palmer an employee of the prime contractor, who was, at that time, designated by LSG as the Human Resource alternate and was one of the persons to whom discrimination and other HR issues are to be reported at the Fort Knox, Hardin County, location.

39.  On October 13, 2016, Pettway reported the discrimination, harassment, and retaliation to Casey Palmer, LSG's HR alternate, that he was being discriminated against because of his age, race, and sex. At that time, Pettway reported:

a.  The disparate treatment of African Americans in general.

b.  Reported the incident involving the recent missing vehicle assignment sheet write-up with no corresponding write-up for Ms. Kathy Wheeler who had failed to provide the assignment sheet.

c.  The regular derogatory tone of Ms. Scott, treating him like he was mentally deficient, because of his age.

d.  Reported Ms. Scott's practice of last minute schedule changes in favor of white employees, to allow white employees to receive all or part of the holiday pay that Pettway was to receive. LSG has since stopped scheduling him during the holidays so that white employees will receive greater income.

e.  Ms. Scott's saying that she did not want Pettway working days because the less she could see of that old man the better.

f.  That when she sees him walking in the door she gets up and gives him a dirty look and slams the door refusing to speak with him.

g.  Scott's constantly putting him down because of his age and race and comments that she has made to drivers about his age.

h.  Reported the harassment and discrimination experienced by other African American employees giving examples which included the treatment of Mr. Allen another African American male.

i.  Told Palmer how this had caused him physical symptoms, upset and anxiety about reporting to work.

Palmer promised that the report was not being made to a deaf ear and he would look into it and see that something was done.

40.  The following day, on October 14, 2016, LSG did, in fact, do something about the report and charges. It retaliated against Pettway, for the discrimination report, by changing his current schedule from full or part-time effective immediately.

41.  No full-time white and particularly no full-time white female had their hours reduced or were demoted to part-time at TMP.

42.  Mr. Pettway later met with Gonsalves, who refused to listen to Mr. Pettway's complaints regarding the discrimination and his being transferred to part time.   As Mr. Pettway was leaving, the meeting Gonsalves said "Mr. P. you should quit and go fishing" Mr. Pettway's response was "Sir, I don't fish."

43.  In October of 2016, Pettway has the most seniority and should have been returned to day shift and kept as full-time.

44.  LSG knew of, supported, encouraged, and ratified the discrimination and harassment against Mr. Pettway specifically and African Americans, older workers and men who are supervised by Ms. Scott.

45.  LSG actively continued to discriminate and retaliate against Mr. Pettway, when he failed to drop his charge of discrimination, further reducing his hours, altering his schedule, and denying him holiday pay in retaliation.

46.  Upon information and belief LSG, Wolverine, Akima and Akima Support, failed to conduct a substantive review into the practices of the Fort Knox, Hardin County, location that indicated active discrimination at the time they took over the contract, or at any time during the contract term.

47.  Upon information and belief, LSG failed to conduct a substantive investigation and review of the complaints conveyed to LSG through Casey Palmer.

48.   Upon information and belief, LSG has not spoken to any of the affected employees, witnesses and former employees and did not review its own records that establish the discrimination.

49.   LSG has failed to stop the harassment, discrimination, and retaliation and in fact has allowed it to increase after receiving notice of the violations.

50.   Pettway has been treated differently than other similarly situated individuals because of his age, race, sex, and/or perceived disability.

51.   LSG holds African American employees to a different standard, terms, and conditions of employment than white employees and particularly white female employees.

52.   LSG, at the Hardin County facility, has a pattern and practice of discriminating against African Americans, regularly giving preference to white employees, writing up African American employees when white employees are not written up.

53.   Upon information and belief, African American employees are denied promotion, demoted from, or not considered for advancement or supervisory positions.   This is particularly true in the Fort Knox, Hardin County, Kentucky TMP location

54.   At LSG's office in Hardin County Kentucky, there is a pattern and practice of discrimination against African American employees.

55.   White employees are given preference over African American employees, for hours, promotions, pay and positions by the Defendants at Fort Knox.

56.   The discrimination and retaliation has caused Pettway to suffer from anxiety, fear, worry and has resulted in loss of sleep, stomach upsets and aggravation of physical conditions affected by stress, including blood pressure.

57.  LSG is liable for discrimination, harassment and retaliation that occurred since February of 2015.

58.  LSG is liable for discrimination, harassment and retaliation that occurred prior to February of 2015 as it's assumption of the contract occurred under such circumstances that it is charged with knowledge of those acts, it failed to address or rectify the misconduct, has ratified them by its continuing actions and failure to act and has successor liability under the substantial continuity test for the pre-February 2015 discrimination, harassment, and retaliation.

59.  Wolverine, Akima and Akima support are jointly and severally liable for all acts of discrimination and retaliation against Mr. Pettway that occurred during their performance of the logistics contract for the TMP area at Fort Knox KY that employed Mr. Pettway.

60.  The Defendants named herein have failed to take any substantive action to stop the discrimination, harassment and retaliatory practices and have failed to adequately investigate the charges, have failed to implement adequate procedures to investigate complaints and allow managers to choose to ignore complaints of discrimination, harassment, and retaliation.

61.  Executive Order 13495 and Federal Regulations 29 CFR §§ 9.0 & 9.2 address a Federal contractor's responsibilities regarding non-displacement of service workers. Under these regulations, Contractors such as the Defendants are not required to make bona fide offers to individuals who are not service employees or who have past unsuitable performance.

62.  Employees qualified as a bona fide executive, administrative, or professional under 29 CFR § 541 are not service employees.

63.     The position held by Mr. Pettway's supervisor Donnell Scott and anyone at the transportation manager's level and above are not service-workers.

64.     Neither Executive Order 13495 nor Federal Regulations 29 CFR §§ 9.0 or 9.2 relieve the named Defendants from their statutory or contractual obligations to not discriminate and to provide equal employment opportunity for everyone regardless of age, sex (or sexual orientation), color, race, creed, national origin, religious persuasion, marital status, political belief, or a disability which does not prohibit performance of essential job functions with reasonable accommodation.

65.     Neither Executive Order 13495 nor Federal Regulations 29 CFR §§ 9.0 & 9.2 relieve the named defendants from their duty to exercise reasonable care in their hiring and supervision practices.

66.     The Defendants have failed to exercise reasonable care to institute or observe adequate procedures to fulfill their legal and contractual obligations in reference to age, sex, race and disability discrimination and retaliation during their contract term and during the transfer of contractual duties and operations from one contractor to another and thereby allowing discrimination and harassment to continue unabated leaving victimized employees without hope that their legal rights will be protected as required by the contract and law, making submission to discrimination and harassment a term and condition of their continued employment.

67.     The Plaintiff filed a charge of Discrimination against LSG for age, race, sex, and disability discrimination and was mailed a right to sue letter dated July 20, 2017 allowing him to file this Amended Complaint adding Federal Civil Rights claims.

## COUNT I

VIOLATION OF KRS CHAPTER 344
PROHIBITING DISABILITY DISCRIMINATION

68.    Pettway realleges and incorporates by reference each and every allegation contained in each of the preceding allegations in paragraphs 1-67 above.

69.    The Defendants, LSG, Wolverine, Akima and Akima Support perceived the Plaintiff, Abraham Pettway, as having a disability and their actions as described above were in violation of KRS CHAPTER 344.

70.    As a direct and proximate result of the acts and practices of the Defendant, its agents and employees in the discriminatory treatment of Plaintiff, on account of Pettway's perceived disability in violation of KRS CHAPTER 344, the Plaintiff, Abraham Pettway, has suffered and continues to suffer injury, including demotion, past and future loss of income, retirement benefits, and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation and other past and future pecuniary losses.

71.    The Defendants acts and practices described above were willful and intentional and outrageous and were performed with malice and/or reckless indifference to the Pettway's protected civil rights, within the meaning of KRS CHAPTER 344.

72.    As a result of the Defendants acts and practices Pettway has incurred a loss of wages and benefits and continuing medical expenses all within the meaning of KRS CHAPTER 344, an amount to be proved at trial, but in excess of the minimum jurisdictional limit of this court.

73.    The Defendants are liable for these damages which include without limitation, lost wages, and medical expenses, back pay from the effective date of his termination, lost benefits

from the date of termination, lost employment benefits from the date of termination, the loss of front pay as the date of this complaint, and any interest on the amount area and as provided in the relevant statutes. The costs also include attorney fees.

74.   The Plaintiff is entitled to an order preliminary and permanently restraining and enjoining the Defendants and their owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert with them from any conduct violating the Plaintiff's and other similarly situated individuals' rights as secured by state law.

COUNT II
VIOLATION OF KRS CHAPTER 344
PROHIBITING AGE DISCRIMINATION

75.   Pettway realleges and incorporates by reference each and every allegation contained in each of the preceding allegations in paragraphs 1-74 above.

76.   The Defendants, LSG, Wolverine, Akima and Akima Support, acts of discrimination against of Pettway were on account of his age in violation of KRS CHAPTER 344.

77.   At all times, relevant hereto the Defendants have been covered under and subject to the requirements of KRS CHAPTER 344.

78.   At all relevant times, the Defendants discrimination of and treatment of Plaintiff was on account of Pettway's age and was in violation of his rights under KRS CHAPTER 344, The Plaintiff's age was the but-for cause of the adverse employment actions described herein.

79.   Alternatively, the Plaintiff's age was a motivating factor in the adverse employment actions described herein.

80.    As a direct and proximate result of the acts and practices of the Defendants, their agents

and employees in the discriminatory treatment of Plaintiff on account of Plaintiff's age in violation of public policy of in violation of KRS Ch 344, the Plaintiff has suffered and continues to suffer injury, including demotion, past and future loss of income, retirement benefits, and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation and other past and future pecuniary losses.

81.   The Defendants acts and practices described above were willful and intentional and were performed with malice and/or reckless indifference to the Plaintiff's protected civil rights, within the meaning of, and in violation of KRS CHAPTER 344.

82.   The Plaintiff is entitled to an order preliminary and permanently restraining and enjoining the Defendants and their owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert with them from any conduct violating the Plaintiff's and other similarly situated individuals' rights as secured by state law.

COUNT III
VIOLATION OF KRS CHAPTER 344
PROHIBITING RACE DISCRIMINATION

83.   The Plaintiff incorporates and realleges paragraphs 1 through 82 of this Complaint as if fully set forth here.

84.   The Defendants, LSG, Wolverine, Akima and Akima Support, acts of discrimination against the Plaintiff was on account of Plaintiff's race and color and violated KRS CHAPTER 344.

85.   As a direct and proximate result of the acts and practices of the Defendants, their agents and employees in the discriminatory treatment of Plaintiff on account of Plaintiff's race

and color in violation of KRS CHAPTER 344, the Plaintiff has suffered and continues to suffer injury, including demotion, past and future loss of income, retirement benefits, and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation and other past and future pecuniary losses.

86.    The Defendants have a pattern and practice of discriminating against employees because of their race and color

87.    The Defendants acts and practices described above were willful and intentional and were performed with malice and/or reckless indifference to the Plaintiff's protected civil rights, within the meaning of KRS CHAPTER 344.

88.    The Plaintiff is entitled to an order preliminary and permanently restraining and enjoining the Defendants and their owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert with them from any conduct violating the Plaintiff's and other similarly situated individuals' rights as secured by state law.

COUNT IV
VIOLATION OF KRS CHAPTER 344
PROHIBITING SEX DISCRIMINATION

89.    The Plaintiff incorporates and realleges paragraphs 1 through 88 of this Complaint as if fully set forth here.

90.    The Defendants, LSG, Wolverine, Akima and Akima Support, acts of discrimination against the Plaintiff was on account of Plaintiff's sex and violated KRS CHAPTER 344.

91.    As a direct and proximate result of the acts and practices of the Defendants, their agents

and employees in the discriminatory treatment of Plaintiff, on account of Plaintiff's sex in violation of KRS CHAPTER 344, the Plaintiff has suffered and continues to suffer injury, including demotion, past and future loss of income, retirement benefits, and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation and other past and future pecuniary losses.

92.    The Defendants have a pattern and practice of discriminating against employees because of their sex in hiring, the terms, and conditions of employment, and promoting employees. This is particularly true at the Fort Knox, Hardin County, Kentucky location of Defendants.

93.    The Defendants acts and practices described above were willful and intentional and were performed with malice and/or reckless indifference to the Plaintiff's protected civil rights, within the meaning of KRS CHAPTER 344.

94.    The Plaintiff is entitled to an order preliminary and permanently restraining and enjoining the Defendants and their owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert with them from any conduct violating the Plaintiff's and other similarly situated individuals' rights as secured by state law.

## COUNT V
## VIOLATION OF ADEA 29 U.S.C. 621 et seq.

95.    The Plaintiff incorporates and realleges paragraphs 1 through 94   of this Complaint as if fully set forth here.

96.    The Defendant, LSG, through its duly authorized agents and employees, willfully and intentionally discriminated against the Plaintiff based on his age in violation of 29 U.S.C. 621 et seq. of the ADEA. The Plaintiff's age was the but-for cause of his demotion

to part-time employment.

97. The Defendant, LSG's acts and employment practices alleged in this Complaint, with respect to the Plaintiff's terms, conditions and privileges of employment, violated 29 U.S.C. 621 et seq. of the ADEA.

98. As a direct and proximate result of the intentional discriminatory acts and practices of the Defendant, LSG, their agents and employees, the Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, including retirement benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation and other past and future pecuniary losses.

99. The Defendant, LSG's acts and practices described above were willful and intentional and were performed with malice and/or reckless indifference to the Plaintiff's federally protected civil rights, within the meaning of the ADEA.

100. The Plaintiff is entitled to an order preliminary and permanently restraining and enjoining the Defendants and their owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert with them from any conduct violating the Plaintiff's and other similarly situated individuals' rights as secured by federal law.

COUNT VI
RACE DISCRIMINATION PROHIBITED
BY 42 U.S.C. 2000(e) et seq.

101. The Plaintiff incorporates and realleges paragraphs 1 through 100 of this Complaint as if fully set forth here.

102. The Defendant, LSG's treatment of the Plaintiff; was on account of Plaintiff's race and

violated 42 U.S.C. 1981 and 42 U.S.C. 2000(e) et seq.

103. As a direct and proximate result of the willful and wrongful acts and practices of the Defendant, LSG's and its agents and employees, the Plaintiff has suffered and continues to suffer injury, including loss of wages, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation, past and future loss of income, retirement benefits, and other employment benefits, and other past and future pecuniary losses.

104. The Defendant, LSG's acts and practices described above were willful and intentional and were performed with malice and/or reckless indifference to the Plaintiff's federally protected civil rights, within the meaning of 42 U.S.C. 1981 and 42 U.S.C. 2000(e) et seq.

105. The Plaintiff is entitled to an order preliminary and permanently restraining and enjoining the Defendants and their owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert with them from any conduct violating the Plaintiff's and other similarly situated individuals' rights as secured by federal law.

<u>COUNT VII</u>
<u>SEX DISCRIMINATION PROHIBITED BY</u>
<u>42 U.S.C. 2000(e) et seq.</u>

106. The Plaintiff incorporates and realleges paragraphs 1 through 105 of this Complaint as if fully set forth here.

107. The Defendant, LSG's treatment of Plaintiff was on account of Plaintiff's sex, and violated 42 U.S.C. 1981 and 42 U.S.C. 2000(e) et seq.

108. As a direct and proximate result of the acts and practices of the Defendant, LSG and its

agents and employees in its discriminatory treatment of Plaintiff on account of his sex, the Plaintiff has suffered and continues to suffer injury, including loss of employment, past and future loss of income, retirement benefits, and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation and other past and future pecuniary losses.

109. The Defendant, LSG's acts and practices described above were willful and intentional and were performed with malice and/or reckless indifference to the Plaintiff's federally protected civil rights, within the meaning of 42 U.S.C. 1981 and 42 U.S.C. 2000(e) et seq.

110. The Plaintiff is entitled to an order preliminary and permanently restraining and enjoining the Defendants and their owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert with them from any conduct violating the Plaintiff's and other similarly situated individuals' rights as secured by federal law.

<u>COUNT VIII</u>
<u>DISABILITY DISCRIMINATION</u>
<u>PROHIBITED BY THE ADA 42 U.S.C. §</u>
<u>12101 et seq.</u>

111. The Plaintiff incorporates and realleges paragraphs 1 through 110 of this Complaint as if fully set forth here.

112. The Defendant, LSG's treatment of Plaintiff was on account of his age as they its perceived him, because of his age, as being disabled and unable to perform major life activities. LSG's treatment of the Plaintiff be is in violation of the Americans with Disabilities act that can be found at 42 U.S.C. § 12101 et seq.

113. As a direct and proximate result of the acts and practices of the Defendant, LSG and its

agents and employees in its discriminatory treatment of Plaintiff on account of his perceived disability, the Plaintiff has suffered and continues to suffer injury, including loss of employment, past and future loss of income, retirement benefits, and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation and other past and future pecuniary losses.

114. The Defendant, LSG's acts and practices described above were willful and intentional and were performed with malice and/or reckless indifference to the Plaintiff's federally protected rights.

115. The Plaintiff entitled to an order preliminary and permanently restraining and enjoining the Defendants and their owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert with them from any conduct violating the Plaintiff's and other similarly situated individuals' rights as secured by federal law.

COUNT IX
RETALIATION PROHIBITED BY 42 U.S.C.
42 U.S.C. 1981 2000(e) et seq., 42 U.S.C.
§ 12203 and 29 U.S.C. 623 d

116. The Plaintiff incorporates and realleges paragraphs 1 through 115 of this Complaint as if fully set forth here.

117. The Defendant, LSG's treatment of Plaintiff was in retaliation for Plaintiff's to his employer, complaints to the Equal Employment Opportunity Commission and the filing of this Complaint and were designed to deter the Plaintiff and others from engaging in protected activity in violation of 42 U.S.C. 1981 and 42 U.S.C. 2000(e) et seq., and 42 U.S.C. § 12203 and 29 U.S.C. 623 d.

118.  As a direct and proximate result of the acts and practices of LSG's and its agents and employees in its retaliatory treatment of Plaintiff on account of his complaints, the Plaintiff has suffered and continues to suffer injury, including loss of wages, past and future loss of income, retirement benefits, and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation and other past and future pecuniary losses.

119.  The Defendant, LSG's, acts and practices described above were willful and intentional and were performed with malice and/or reckless indifference to the Plaintiff's federally protected civil rights, within the meaning of 42 U.S.C. 1981, 42 U.S.C. 2000(e) et seq., and 42 U.S.C. § 12203 and 29 U.S.C. 623 d. The Plaintiff is entitled to an order preliminary and permanently restraining and enjoining the Defendants and their owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert with them from any conduct violating the Plaintiff's and other similarly situated individuals' rights as secured by federal law.

COUNT X
VIOLATION OF KRS CHAPTER 344
PROHIBITING RETALIATION

120.  The Plaintiff incorporates and realleges paragraphs 1 through 119 of this Complaint as if fully set forth here.

121.  The Defendants, LSG, Wolverine, Akima and Akima Support, acts of retaliation against the Plaintiff were on account of Plaintiff's reporting and refusing to drop charges of discrimination in violation of KRS 344.280 and designed to deter the Plaintiff and others from engaging in protected activity.

122.    As a direct and proximate result of the acts and practices of the Defendant, its agents, and employees in retaliating against the Plaintiff has suffered and continues to suffer injury, including demotion, past and future loss of income, retirement benefits, and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation and other past and future pecuniary losses.

123.    The Defendants acts and practices described above were willful and intentional and were performed with malice and/or reckless indifference to the Plaintiff's protected civil rights, within the meaning of KRS CHAPTER 344.

124.    The Plaintiff is entitled to an order preliminary and permanently restraining and enjoining the Defendants and their owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert with them from any conduct violating the Plaintiff's and other similarly situated individuals' rights as secured by state law.

## COUNT XI
## OUTRAGEOUS CONDUCT

125.    Pettway realleges and incorporates by reference each and every allegation contained in each of the preceding allegations in paragraphs 1-124 above.

126.    The Defendants, LSG, Wolverine, Akima and Akima Support, actions as set forth herein, were outrageous, intolerable, and so extreme and outrageous, intentional, or reckless as to exceed all bounds of decency which prevail in civilized communities and societies.

127.   The Defendants actions as set forth herein, were conscious, intentional acts and the Defendants knew or should have known that such acts would likely cause emotional distress.

128.   As a direct and proximate result of the Defendants outrageous conduct, as set forth herein, the Defendants actions as set forth herein, did in fact cause the Plaintiff emotional distress and caused the physical symptoms described hereinabove.

129.   That the Defendants have caused the injuries, damages, and losses to the Plaintiff by their outrageous conduct; and, the Plaintiff is entitled to recover against the Defendant for the injuries, damages and losses set forth herein.

130.   The Defendant is liable to the Plaintiff for punitive and compensatory damages.

## COUNT XII
## NEGLIGENT HIRING, SUPERVISION

131.   Pettway realleges and incorporates by reference each and every allegation contained in each of the preceding allegations in paragraphs 1-131 above.

132.   That the Defendants, LSG, Wolverine, Akima and Akima Support, were required to exercise reasonable care in hiring and supervising the actions of its managers, supervisors, and employees.

133.   The Defendants knew or should have known, that it created an unreasonable risk of harm to the Plaintiff by failing to exercise reasonable care in hiring and supervising, control or otherwise monitor the activities of its supervisors, managers, and employees.

134.   The Defendants knew or should have known, that it created an unreasonable risk of harm to the Plaintiff and others by failing to exercise reasonable care to institute adequate

procedures in hiring non-service works and in transferring service workers between contractors to fulfill their duties under both the law and the contract terms and conditions.

135.   The Defendants, have caused damages by way of their negligent hiring and supervision and the Plaintiff is entitled to recover against the Defendant for his injuries, damages and losses caused by the Defendants negligent hiring and supervision as set forth herein.

**WHEREFORE**, Pettway prays for the following relief:

1.   Judgment against the Defendants on all counts.

2.   For compensatory and punitive damages.

3.   Requiring the Defendant to reinstate the Plaintiff to his full-time day position or a position of equal duties, and responsibilities, with equal pay and benefits, as the Plaintiff would have received but for the discriminatory conduct, and an award of back pay for the sums he would have earned and front pay for what he should earn, had he not been subject to discrimination discriminatory conduct.

4.   For Pettway's reasonable attorneys' fees.

5.   Granting the Plaintiff, the right to amend his pleadings as additional claims accrue or are revealed by the facts and evidence found during discovery.

6.   Declaring that the acts and practices complained of here are in violation of the Plaintiffs rights as secured by state and federal law.

7.   An Order preliminary and permanently restraining and enjoining the Defendants and their owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert with them from any conduct violating the Plaintiff's and other similarly situated individuals' rights as secured by state and federal

law.

8. Awarding the Plaintiff lost pay, back pay, unpaid benefits; interest and appropriate recovery for the lost employment benefits, and other affirmative relief as may be appropriate.

9. **A jury trial on all issues so triable.**

10. For all costs of suit herein.

11. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Patricia A. Abell
Patricia A. Abell, Esq.
101 North Seventh St
Louisville, KY 40202
(502) 561-3455
pabell@patriciaabell.com
Counsel for Abraham James Pettway

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on this 16th day of October 2017, the foregoing was sent via electronic and first-class mail to the following:

Theodore W. Walton
CLAY DANIEL WALTON& ADAMS PSC
101 Meidinger Tower
462 South Fourth Street
Louisville, KY  40202
Telephone: (502) 561-2005
ted@justiceky.com
*Attorneys for Defendant*

/s/ Patricia A. Abell_____
Patricia A. Abell